## THE BISHOP & BABCOCK CO. v. MARTINO

____

(October 29, 1928. Opinion and Decree.)
(November 26, 1928. Rehearing Refused.)
(January 3, 1929. Decree Supreme Court Writ Refused.)

____

L. L. Dubourg, Dart & Dart & Price, of New Orleans, attorneys for plaintiff, appellant.

Alex M. Swords, of New Orleans, attorney for defendant, appellee.

JONES, J. Plaintiff sues for $1,105.65 with interest and 15 per cent attorney's fees on notes given by defendant as part of the purchase price of a soda fountain purchased from plaintiff. It also prays for recognition of its vendor's privilege and mortgage on the fountain; or, in the alternative, that it be decreed to be the owner of the fountain, reserving its right to sue for damages for breach of contract.

Defendant asks for a rescission of the contract of sale and the return to him of $469.05; or, in the alternative, a reduction of price of $1,407.25.

The reasons assigned by defendant why the contract should be rescinded are in part as follows:

"That the soda fountain which the plaintiff sold to respondent was so defective that it was wholly inadequate for the purposes for which it was purchased.
"Upon installation of fountain when the expansion valves from the refrigerating plant which supplied the fountain were opened sufficiently to keep the ice-cream at its proper temperature, the water and syrups would freeze, and when the temperature was lowered to the proper temperature for the syrups and water, the ice-cream would melt. By these radical defects either in the design or construction of said fountain, respondent was deprived of the service that such an apparatus should have afforded."

Defendant finally averred that, after making many futile complaints, he had offered to return the fountain to plaintiff, but his offer was declined. He then prayed for rescission of the contract, and in the alternative, for diminution of price.

The trial court decided in favor of defendant and plaintiff in reconvention ordering a rescission of the agreement and a repayment of the amounts paid by the defendant together with the return of the outstanding notes. It was further ordered as a condition precedent to the execution of the above part of the judgment that the soda fountain, in its present condition, should be placed at plaintiff's disposal.

The evidence shows conclusively that above quoted allegations of defendant's answer are correct and that the soda water fountain was wholly inadequate to serve the intended purpose. If the ice cream compartment was at the proper temperature, the water would freeze, if, on the other hand, the water was kept at the right temperature, the ice cream would melt.

Plaintiff contends that these defects were due entirely to the maladjustment of the refrigerator pipes and that defendant was entirely responsible for the adjustment. Defendant, on the other hand, contends that he knew nothing about refrigeration or the working of the soda water fountain; that plaintiff's agent was thoroughly familiar with the plan of Frey's Grocery Store in which he was to operate this soda fountain, and with all the pipes carrying ammonia gas for refrigeration to the various stores in the building.

The main issue to be decided here is the responsibility for the faulty connection of the refrigerator pipes. On this point we get no help from the contract, which merely uses the following language:

"Refrigeration with brick compartment coils. Refrigerating machine to be furnished by customer."

The record shows that the plaintiff company had ceased to make the type of fountain used in this case and that plaintiff was furnished with some data concerning the refrigerator plant previous to filling the order. There is a conflict between the witness as to who actually made the connection between the refrigerating machine and the soda water fountain. Defendant and his witnesses swear positively that the connection was not made by anyone connected with him, while plaintiff's witnesses are somewhat hazy about the matter.

Mr. Loubat, the agent of plaintiff, who sold the machine and superintended its erection swears that the connection was made by local expert, who connects all of the refrigeration. He did not know who employed the expert. Defendant swears positively that he did not do so and that he never paid one cent for any such service.

The record shows that defendant was constantly complaining of the unsatisfactory work done by the fountain and that he sustained considerable loss as he had to throw away quantities of ice cream; that plaintiff made no serious effort to remedy the defects although it was given ample time to do so.

After hearing about seven or eight witnesses and going into all the surrounding circumstances the trial Judge solved this question of fact against plaintiff and a careful reading of the record convinces us that there is no error in his decision. The Supreme Court has said on this point:

"Where machinery, purchased for particular use, is so defective in design or construction, or both, as to be incapable of rendering the service contemplated by the contract, the obligation rests upon the vendor to ascertain the nature of the defects and to cure them."

Woodward, Wight & Co. vs. Engel Land & Lbr. Co., 123 La. 1093, 49 So. 719, Syl. 1.

Although a plea of one year's prescription was filed by plaintiff against defendant's demand for a restitution of the amount which he had paid, this plea was overruled by the trial court and no reference has been made of it either in argument or brief. At any rate it was not sound. (See above quoted case.)

For the above reasons the judgment is affirmed.